FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 19, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER LEE C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No: 1:21-cv-03095-LRS <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 17. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Jeffrey Schwab. Defendant is represented by Special Assistant United States Attorney Lars J. Nelson. The Court, having reviewed the administrative record and the parties' briefing, is fully

---

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy. *See* LCivR 5.2(c).

ORDER - 1

1    informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is

2    denied and Defendant's Motion, ECF No. 17, is granted.

3                                    **JURISDICTION**

4            Plaintiff Christopher Lee Clyburn (Plaintiff), filed for disability insurance

5    benefits (DIB) on January 12, 2019, alleging an onset date of February 28, 2017,

6    which was amended to August 1, 2017, at the hearing.  Tr. 37, 160-68.  Benefits

7    were denied initially, Tr. 96-98, and upon reconsideration, Tr. 100-02.  Plaintiff

8    appeared at a hearing before an administrative law judge (ALJ) on November 12,

9    2020.  Tr. 34-68.  On November 20, 2020, the ALJ issued an unfavorable decision,

10   Tr. 13-33, and on June 2, 2021, the Appeals Council denied review.  Tr. 1-6.  The

11   matter is now before this Court pursuant to 42 U.S.C. § 405(g).

12                                    **BACKGROUND**

13          The facts of the case are set forth in the administrative hearings and

14   transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and

15   are therefore only summarized here.

16          Plaintiff was born in 1968 and was 52 years old at the time of the hearing.  Tr.

17   36-37.  He last job was performing maintenance for rental units.  Tr. 43.  He has

18   work experience as automotive service advisor and automotive service technician.

19   Tr. 45-48.  Plaintiff testified that he initially hurt his left knee in junior high school

20   and has had multiple instances of re-injury.  Tr. 38.  He testified that he has severe

21   pain and stiffness in his knee and that he is limited in his ability to stand for any

ORDER - 2

period of time or walk very far.  Tr. 38.  When he sits for very long, it stiffens up and becomes difficult to stand.  Tr. 38.  Surgery is not available unless he loses weight.  Tr. 39.  He has used a cane on and off for years but had been using it daily in the five to six months before the hearing.  Tr. 39.

Plaintiff testified he also has problems with his right hand and wrist.  Tr. 49.  When he squeezes things, his hand cramps and becomes painful.  Tr. 49.  He cannot carry much more than 15 pounds.  Tr. 49.  He cannot type at a computer for long without cramping.  Tr. 50.  Carpal tunnel release surgery is an option, but he is terrified of surgery.  Tr. 49.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 3

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

ORDER - 4

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since August 1, 2017, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, left-knee degenerative joint disease; and carpal tunnel syndrome in the right upper extremity. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> he can stand and walk for two hours out of an eight-hour day and sit for six hours; he can push and pull frequently with the left lower extremity; with his dominant right upper extremity, he can perform frequent gross handling and feeling; he can perform occasional postural activities except that he can frequently stoop and can never climb ladders, ropes, or scaffolds; he must avoid concentrated exposure to hazards.

Tr. 20.

ORDER - 7

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 26.  At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as electrical accessories assembler, bench assembler, or storage facility rental clerk.  Tr. 28.  Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2017, through the date of the decision.  Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act.  ECF No. 16.  Plaintiff raises the following issues for review:

1.    Whether the ALJ properly considered the Listings at step three; and

2.    Whether the ALJ made a legally sufficient step five finding.

ECF No. 12.

## DISCUSSION

**A.    Step Three**

Plaintiff contends the ALJ failed to properly consider Listing 1.02 for major dysfunction of a joint.  ECF No. 12 at 6-14.  At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the Listings.  *See* 20

ORDER - 8

C.F.R. § 404.1520(d). The Listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy,* 738 F.3d at 1176. If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

An impairment "meets" a listing if it meets all of the specified medical criteria. *Sullivan,* 493 U.S. at 530; *Tackett,* 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan,* 493 U.S. at 530; *Tackett,* 180 F.3d at 1099. An unlisted impairment or combination of impairments "equals" a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. § 404.1526(b).

"If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to

ORDER - 9

determine whether they meet or equal the characteristics of any relevant listed

impairment." *Tackett*, 180 F.3d at 1099.  However, "[m]edical equivalence must be

based on medical findings," and "[a] generalized assertion of functional problems is

not enough to establish disability at step three." 20 C.F.R. § 404.1526(a).  The

claimant bears the burden of establishing an impairment (or combination of

impairments) meets or equals the criteria of a listed impairment.  *Burch v. Barnhart*,

400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff contends his left knee and wrist impairments equal Listing 1.02 for

major dysfunction of a joint.  ECF No. 12 at 7. Listing 1.02[2] describes major

dysfunction of a joint as an impairment which is:

> Characterized by gross anatomical deformity (e.g., subluxation,
> contracture, bony or fibrous ankylosis, instability) and chronic joint
> pain and stiffness with signs of limitation of motion or other abnormal
> motion of the affected joint(s), and findings on appropriate medically
> acceptable imaging of joint space narrowing, bony destruction, or
> ankylosis of the affected joint(s).  With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip,
> knee, or ankle), resulting in inability to ambulate effectively, as
> defined in 1.00B2b;
> or
> B. Involvement of one major peripheral joint in each upper extremity
> (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform
> fine and gross movements effectively, as defined in 1.00B2c.

---

[2] Listing 1.02 was removed and replaced with Listing 1.18 effective April 2, 2021.
20 C.F.R. § Pt. 404, Subpt. P, App. 1 (April 2, 2021).  The Court considers the
Listing in effect at the time of the ALJ's decision.

ORDER - 10

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.

An inability to ambulate effectively means "an extreme limitation of the ability to walk," which is an impairment that "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. "Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b(1). The Listing further provides:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b(2).

The ALJ found that Plaintiff's wrist and knee impairments do not meet Listing 1.02, individually or in combination. Tr. 19. The ALJ noted his impairments do not

render him incapable of effective gross or fine movements,[3] and do not render him incapable of effective ambulation. Tr. 19.

Plaintiff's argument is that he meets all elements of Listing 1.02 based on his knee condition, except that he does not use "a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b(1); ECF No. 12 at 7-11. He argues, however, that symptoms of bilateral carpal tunnel syndrome "implicate[] the kind of limited use of his bilateral extremities that would satisfy an equaling of Listing 1.02A." ECF No. 12 at 11. In other words, Plaintiff argues that carpal tunnel syndrome creates limitations equivalent to the use of a hand-held assistive device such as a walker, limiting the functioning of both upper extremities. Accordingly, Plaintiff's argument is essentially that he experiences an inability to ambulate effectively due to the combination of his knee condition and carpal tunnel syndrome.

First, as Defendant observes, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch,* 400 F.3d at 683. An ALJ does not have an obligation

_____

[3] Plaintiff does not contend he is unable to perform fine and gross movements effectively under Listing 1.02B so the court's analysis is limited to the ability to ambulate effectively under listing 1.02A.

ORDER - 12

to discuss medical equivalency *sua sponte* and does not err by failing to do so when the issue was not argued or explained at the hearing. *See Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020). In this case, the issue of equivalency was not raised, argued, explained, or mentioned at the hearing, and Plaintiff's theory that symptoms of carpal tunnel syndrome combined with his knee impairment result in an inability to ambulate effectively is raised for the first time at summary judgment. Thus, the ALJ did not err by failing to specifically discuss equivalency in the decision.

Second, the ALJ's finding that Plaintiff is not incapable of effective ambulation is supported by substantial evidence. Tr. 19. For instance, the ALJ noted that during a consultative examination in April 2019, William Drenguis, M.D., found Plaintiff had an antalgic gait and difficulty rising from a chair with his arms crossed, but could rise on his own by pushing off with his hands and could ambulate independently. Tr. 19, 346-51. The ALJ also noted findings of normal gait and station by orthopedic providers. Tr. 19, 285 (August 2018), 376 (November 2019).

During a June 2018 office visit to check Plaintiff's hypertension, he had no other complaints, and on exam demonstrated normal range of motion and strength with no tenderness or swelling. Tr. 22, 313. In August 2018, Plaintiff reported he had over a year of improvement in his knee after a prior corticosteroid injection and sought another. Tr. 22, 285-86. In April 2019, he reported having injuries from sledding and slipping on ice over the winter that had healed but said he was still limited. Tr. 22, 357. On exam, he had normal range of motion and strength with no

tenderness or swelling.  Tr. 22, 357.  There were similar findings in October 2019, although Plaintiff felt very limited by chronic knee pain, stated he needed to lose weight to get knee surgery, and found it difficult to exercise due to his knee.  Tr. 22, 378.

The following month, in November 2019, Plaintiff reported to the orthopedist that he had at least a couple of months of relief from steroid injections in the past year.  Tr. 22, 375.  He complained of aching pain, discomfort at night, and episodic swelling, catching, and grinding in his left knee.  Tr. 22, 375.  On exam, there was some tenderness, but no obvious swelling, ecchymosis, or deformity; he had active motion for full extension to 120 degrees of flexion; no pain with hyperextension or overpressure of flexion; the knee was stable to stress tests; sensations were intact; and he had good distal pulses.  Tr. 22, 375.  At a January 2020 podiatry appointment, the provider noted findings such as normal alignment of the knees, normal and symmetrical reflexes in the lower extremities, and normal sensation in the lower extremities.  Tr. 384.  The ALJ concluded that Plaintiff's symptoms were worse in June 2017 than they were after his August 2017 alleged onset date, and that after his initial orthopedic consultation and corticosteroid injection, he presented with more normal gait and range of motion and milder complaints.  Tr. 22.  While he did continue to have limitations, he did not show marked limitations in mobility or strength.  Tr. 22.  All of these findings are reasonable and constitute substantial evidence supporting the step three finding.

Plaintiff cites records regarding his gait and use of a cane in support of his argument that his ambulation is impaired. ECF No. 12 at 10-11. It is noted that the issue is not, as Plaintiff indicates, "whether the impairment has risen to such a degree that it impairs ambulation?" ECF No. 12 at 10. The issue is whether there is an "*inability* to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02A.

Plaintiff cites two records preceding the alleged onset date indicating "slightly antalgic gait" and "very mild guarded antalgic" gait, ECF No. 12 at 10 (citing Tr. 267, 290), which may be evidence of impairment, but do not constitute evidence of an inability to ambulate. Plaintiff also cites a June 2017 record which indicates the treating PA discussed treatment options, including among them use of a cane. Tr. 288. However, no cane was prescribed, and Plaintiff pursued other options. Tr. 288. Plaintiff also cites his own reports of using a cane and that his carpal tunnel is worse when using his cane, ECF No. 12 at 10 (citing Tr. 39, 205, 347, 350), but the ALJ found Plaintiff's statements about his limitations not consistent with the record. Tr. 21; *infra*.

Plaintiff also cites a finding by Steven Drenguis, M.D., of markedly antalgic gait favoring the left side. ECF No. 12 at 10 (citing Tr. 349). Notably, the ALJ observed a discrepancy because the next day, Plaintiff's primary care provider recorded exam findings of "normal range of motion and strength, no tenderness or swelling," and made no notation regarding gait. Tr. 24, 357-58. The ALJ found that this and discrepancies with orthopedic findings of generally normal ambulation and

a wider range of knee motion suggest Dr. Drenguis' findings reflect either a transient exacerbation or some magnification of symptoms by Plaintiff. Tr. 24. The evidence cited by Plaintiff is insufficient to demonstrate the extreme limitation in the ability to ambulate effectively required by Listing 1.02A. *See, e.g., Jessop v. Colvin*, No. 2:15-cv-000388-EJF, 2016 WL 4074144 (D. Utah July 29, 2016) (despite evidence of difficulty ambulating including a "mildly antalgic gait," sometimes using a cane, and using an electric wheelchair for shopping, "difficulty ambulating does not equate with an inability to ambulate effectively."); *Kennedy*, 738 F.3d at 1176 ("Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'").

With respect to Plaintiff's carpal tunnel syndrome, the ALJ found that Plaintiff does not have a listing-level hand impairment. Tr. 19. The ALJ noted that Dr. Drenguis found mildly diminished 4+/5 right grip strength and normal 5/5 left grip strength. Tr. 19, 348. Plaintiff's strength was normal 5/5 throughout his extremities, and Dr. Drenguis assessed no limitations on fine or gross manipulative activities except a limitation to occasional for handle, finger, and feel with the right upper extremity. Tr. 19, 350. The ALJ also found Plaintiff's minimal treatment and follow up for carpal tunnel syndrome is inconsistent with marked limitations in using his hands. Tr. 23. These findings are supported by substantial evidence.

Lastly, Plaintiff contends his testimony about his complaints should be credited. ECF No. 12 at 14. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). Plaintiff asserts there is no evidence that his complaints are not supported, ECF No. 12 at 14, but does not address the reasons given by the ALJ for finding Plaintiff's symptom claims are not entirely consistent with the record.

First, the ALJ found Plaintiff's knee problems improved with treatment. Tr. 22-23; *see supra*. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3). Second, the ALJ noted inconsistencies between Dr. Drenguis's exam findings and exam findings by a different provider the next day. *See supra*. The ALJ evaluates a claimant's statements for their consistency, both internally and with other information in the case record. S.S.R. 16-3p. Third, the ALJ found the record

contains evidence of activities inconsistent with Plaintiff's allegations.  Tr. 24.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain when evaluating symptom claims.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Plaintiff reported activities such as daily cleaning and laundry, cooking with breaks, performing minor household repairs, working part-time in maintenance and/or automotive service, and going sledding, which the ALJ found indicate Plaintiff has retained the ability to perform manipulative activities for part of a day or at intervals, and a greater capacity for standing and walking than alleged.  Tr. 24, 44, 54, 201, 275, 347, 357.  None of these findings are specifically challenged by Plaintiff, ECF No. 12 at 14, and the court concludes they are supported by substantial evidence.

**B.    Step Five**

Plaintiff asserts the ALJ failed to conduct a proper step five analysis because the finding that there are jobs available that Plaintiff can perform was based on an incomplete RFC and hypothetical.  ECF No. 12 at 14-16.  The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101.  The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel.  *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d

ORDER - 18

747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes*, 881 F.2d at *id.*

### 1. *Jeffrey Ventre, M.D.*

Plaintiff argues the ALJ should have included "observations and limitations" from Dr. Ventre in the RFC and hypothetical. An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c. A medical opinion is a statement from a medical source about what a claimant can still do despite his impairments and whether the claimant has one or more impairment-related limitations or restrictions in various functional areas. 20 C.F.R. § 404.1513(a)(2). Dr. Ventre saw Plaintiff in July 2015 for a physiatric consultation and electrodiagnostic testing regarding pain in his right arm and elbow. Tr. 275. The ALJ considered Dr. Ventre's treatment notes in evaluating Plaintiff's carpal tunnel syndrome, Tr. 23, 275, but did not otherwise assign weight or include findings from Dr. Ventre's treatment notes in the RFC or hypothetical.

Plaintiff cites the "History of Present Illness" section of Dr. Ventre's notes which indicate that Plaintiff's symptoms range from two to nine out of ten; that repetitive motions, twisting the wrist, and arm hammering can make symptoms worse; and that he experiences weakness in his arm and grip. ECF No. 12 at 15

(citing Tr. 275).  As Defendant observes, the statements cited by Plaintiff are his own symptom statements recorded by Dr. Ventre in his treatment notes.  ECF No. 17 at 14.  Treatment notes, in general, do not constitute medical opinions.  *See* 20 C.F.R. § 404.1513(a).  The Ninth Circuit has found no error in ALJ decisions that do not weigh statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work.  *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing that when a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.").  Based on the foregoing, the ALJ did not err with respect to Dr. Ventre's opinion.

*2.  Steven Drenguis, M.D.*

Dr. Drenguis examined Plaintiff in April 2019 and diagnosed bilateral degenerative joint disease of the knees, left much worse than the right, and right hand carpal tunnel syndrome.  Tr. 346-51.  He opined that Plaintiff can stand and walk less than two hours in an eight-hour workday; sit at least six hours in an eight-hour workday; maximum lifting and carrying capacity is 20 pounds occasionally and 10 pounds frequently; may occasionally climb or stoop and should never balance, kneel, crouch, or crawl; right upper extremity has no limits on reaching but may only

occasionally handle, finger, and feel; left upper extremity has no limits on reaching, handling, fingering, or feeling.  Tr. 350.

For claims filed after March 27, 2017, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may, but is not required, to explain how other factors were considered.  20 C.F.R. § 404.1520c(b)(2); *see* 20 C.F.R. § 404.1520c(c)(1)-(5).

The ALJ found Dr. Drenguis' opinion is not entirely persuasive.  Tr. 25.  The ALJ concluded that while Dr. Drenguis' opinion has some support from exam findings and Plaintiff's history, the limitations assessed are not entirely consistent with the record overall.  Tr. 25.  With respect to standing and walking limitations and postural limitations, the ALJ determined that Dr. Drenguis' limitations are inconsistent with findings from other providers.  *See* 20 C.F.R. § 404.1520c(b)(2).  For example, the ALJ noted findings such as generally normal gait, milder limitations in knee movement, generally normal appearing movement and strength, and only intermittent findings of knee swelling, and Plaintiff's reported improvement with corticosteroid injections.  Tr. 25; *supra*.

With respect to right hand limitations, the ALJ determined Dr. Drenguis' assessment of a limitation to occasional handling, fingering, and feeling with the right hand is not supported by exam findings or consistent with the record. 20 C.F.R. § 404.1520c(b)(2). The ALJ noted Dr. Drenguis found some decreased sensation and mild reduction in right grip strength but observed Plaintiff performed both fine and gross manipulative activities without difficulty and has normal range of motion in the wrist. Tr. 25, 348-50. The ALJ concluded that Dr. Drenguis must have relied on Plaintiff's report of difficulty with repetitive motions and use of tools. Tr. 25, 347. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ also pointed out that Plaintiff did not seek treatment beyond a night brace provided in 2018 and engaged in activities like cooking, cleaning, and repairs which require handling, fingering, and feeling with his right hand. Tr. 26; *supra*. Additionally, the ALJ observed there is little evidence of difficulty with fine fingering and that Plaintiff's allegations primarily involve repetitive tasks and grip activities involving gross handling such as tools. Thus, the ALJ reasonably found that Plaintiff can perform frequent gross handling and feeling and has no limitation on fingering. Tr. 20, 26.

Plaintiff does not address the reasons given by the ALJ for finding Dr. Drenguis' opinion only partially persuasive. ECF No. 12 at 15. Instead, Plaintiff

argues the opinion is consistent with the record and should be credited. ECF No. 12 at 16. The existence of a legally supportable alternative resolution of the evidence does not provide a sufficient basis for reversing an ALJ's decision that is supported by substantial evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir.1987). Here, the ALJ's findings regarding Dr. Drenguis' opinion are based on the record and involve reasonable inferences from the evidence. The ALJ's reasoning is explained with specificity and is supported by substantial evidence.

Thus, the limitations included in the RFC and hypothetical to the vocational expert reflect those restrictions credited by the ALJ. As noted *supra*, the ALJ is free to accept or reject restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes*, 881 F.2d at *id.* The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper and there is no error. *See id.*; *Bayliss*, 427 F. 3d at 1217-18.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

ORDER - 23

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 19, 2022.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 24